<u>**NOT FOR PUBLICATION**</u>

                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

DERRICK TAYLOR,                    :
                                   : CIVIL ACTION NO. 04-5864 (MLC)
        Plaintiff,                 :
                                   :      **MEMORANDUM OPINION**
        v.                         :
                                   :
ROY HENDRICKS, et al.,             :
                                   :
        Defendants.                :
_____   :

<u>**COOPER, District Judge**</u>

        This matter comes before the Court on the unopposed summary

judgment motion by defendants Roy L. Hendricks and Ronald H.

Cathel pursuant to Federal Rule of Civil Procedure ("Rule")

56(c).[1]  The Court, for the reasons stated herein, will grant

defendants' motion for summary judgment.

                          <u>**BACKGROUND**</u>

I.    <u>**Facts**</u>

        Plaintiff <u>pro</u> <u>se</u>, Derrick Taylor, is a prisoner housed in

New Jersey State Prison ("NJSP").  (Compl. at 2.)  Plaintiff has

been incarcerated in NJSP since May 2003.  (Appl. to Proceed in

Forma Pauperis at 2.)  Plaintiff alleges that defendants were

_____

        [1]  The complaint also names George Achebe and Mary Amato, a
doctor and nurse, respectively, at New Jersey State Prison.
Amato is incorrectly named Mary Amata in the complaint. (<u>See</u>
Achebe/Amato Answer at 1.)  Plaintiff also names "Dr. Dunbar" in
the complaint.  Defendants assert no Dr. Dunbar works at NJSP.
(Def. Br. at 3.)  No Dunbar was served.  (<u>See</u> docket entry no.
5.)  The Court, therefore, will order the Clerk of the Court to
designate Dunbar as terminated from the action.

deliberately indifferent to his medical needs, specifically an
ankle injury and gastroesophageal reflux disease ("GERD"), by
failing to refill his prescriptions in a timely manner, delaying
renewal of an elevator pass, and seizing Timberland boots used to
support his injured ankle.  (Compl. at 2-4.)

While a prisoner in Connecticut State Prison, plaintiff
suffered a dislocated and broken ankle; the ankle is now
arthritic and the ankle joint "destroyed."  (Id. at 2.)
Plaintiff walks with a cane, has a limited range of motion, and
asserts that he is in significant pain.  (Id.)  Because of
plaintiff's ankle condition, doctors have prescribed plaintiff
Ibuprofen three times daily for pain, and an elevator pass so he
does not have to walk on steps.[2]  (Id. at 2-3; see, e.g.,
Medication Administration Record ("Med. Rec.") of Aug. 2004,
Chart Note ("Chart") of Feb. 27, 2004, Aff. of George Riehm in
support of Def. Mot. for Summ. Judg., Ex. A.)  Plaintiff receives
60 to 90 days worth of Ibuprofen in each prescription.  (See
Compl. at 2; see generally Med. Rec.)  Plaintiff asserts that
when his prescription expires he must "jump through hoops" in

---

[2]  Plaintiff asserts that Ibuprofen is counter-indicated in
light of his "second medication," presumably Zantac for
gastroesophageal reflux disease.  (Compl. at 2.)  However, this
is not included in the list of grounds upon which plaintiff seeks
relief.  (See generally id. at 7.)  This amounts to disagreement
with treatment and would not be a ground for relief on which
plaintiff could recover under 42 U.S.C. § 1983.  See infra,
Discussion, Section II.

order for prison doctors to refill his prescriptions, including filing administrative requests and letters and having family members call the prison. (Compl. at 2.)  Plaintiff asserts that it often takes 60 to 90 days to receive refills of Ibuprofen. (Compl. at 2.)

Plaintiff is housed on the fourth floor of the prison and uses an elevator pass so he does not have to walk on stairs. (Compl. at 2.)  When plaintiff is without an elevator pass he has to walk six to seven flights of steps to leave the unit, which causes him not to attend recreation activities, Jewish services, and other programs. (Id.)  Plaintiff asserts that when his elevator pass expires, defendants do not renew it for several weeks. (Id.)  Plaintiff asserts that in order to obtain the elevator pass, he has to take actions similar to those he takes for getting his Ibuprofen refilled, including sending administrative requests and letters asking for the pass. (Id. at 2-3.)  Plaintiff also alleges that on July 25, 2004 prison officers took his Timberland boots, which he wore to provide ankle support, and subjected him to disciplinary action for possessing the boots as part of a "shakedown." (Id.)  Plaintiff asserts that prison officials have not returned the boots, despite his attempts to resolve the situation through administrative channels. (Id.)  Plaintiff asserts that he currently does not have footwear that supports his ankle, which

3

prevents him from receiving visits or going to certain parts of the prison.  (Id.)

Plaintiff was diagnosed with GERD in 1991.  (Id. at 3.) Plaintiff has received Zantac or a similar medication to treat GERD for the past nine to ten years.  (Id.)  Plaintiff began taking medication two to three times daily to control GERD in 1995.  (Id.)  GERD causes plaintiff severe pain and discomfort, which the medication helps control.  (Compl. at 3.)  Plaintiff asserts that the medication does not become effective for several days.  (Id.)  Similar to plaintiff's Ibuprofen prescription, plaintiff receives Zantac or similar medications in 60- to 90-day increments.  (Id. at 4.)  Plaintiff asserts that the prison takes between 60 and 90 days to refill his GERD prescription, despite his requests and letters for refills.  (Id.)  As a result, plaintiff spends the intervening time in pain.  (Id.)  Plaintiff further asserts there is medical evidence that GERD, if untreated, can lead to "Barrett's Esophagus," a "pre-cancerous disease."  (Id. at 3-4.)

Plaintiff's medical records show that between June 2003 and March 2005 he visited the prison infirmary at least 14 times. (See Chart.)

The moving defendants do not rebut plaintiff's factual claims, but deny plaintiff has received inadequate medical care. (Def. Br. at 1.)  Defendants assert that plaintiff has not shown

4

they "were deliberately indifferent to his needs by ignoring a serious risk of harm," as required for an Eighth Amendment violation. (Id.)  They argue, instead, that plaintiff "has received regular medical care at NJSP for his medical problems during the time period alleged in [the] complaint." (Id. at 4.) Defendants assert that plaintiff disagrees with the medical care he has received. (Id.)

Plaintiff alleges that defendants knew of his problems in receiving medical treatment and that their actions or inaction constitute deliberate indifference to his medical needs. (Compl. at 4.)  Plaintiff seeks injunctive relief requiring defendants to "promptly provide appropriate medical care," $50,000 in compensatory damages, and $50,000 in punitive damages against each defendant. (Id. at 7.)

## II.   **Procedural History**

Plaintiff filed the pro se complaint on November 30, 2004 alleging violations of his civil rights under 42 U.S.C. ("Section") 1983 by medical and administrative personnel of NJSP. The complaint names Hendricks, the former prison administrator, and Cathel, the current prison administrator (the "administrative defendants"), and Achebe, a doctor at the prison, and Amato, a nurse at the prison (the "medical defendants").  The complaint alleges that the medical and administrative defendants violated

plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

Defendants Achebe and Amato answered the complaint on January 6, 2005 and cross-claimed against defendants Hendricks and Cathel for contribution.  The Clerk of the Court entered a default against defendants Hendricks and Cathel for failure to plead on February 28, 2005.

Defendants Hendricks and Cathel filed a motion to set aside the default and extend time to answer on March 16, 2005, arguing that they had never received notice of the complaint.  The Magistrate Judge granted that motion and extended the administrative defendants' time to answer until May 13, 2005. Defendants Hendricks and Cathel filed a motion for summary judgment in lieu of an answer on May 13, 2005.  Plaintiff has not opposed this motion.

Plaintiff filed a motion for reconsideration of the Magistrate Judge's order setting aside the default on May 18, 2005.  The Magistrate Judge denied the motion on June 22, 2005.

### DISCUSSION

### I.   Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the summary judgment movant has met this <u>prima</u> <u>facie</u> burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A nonmovant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Under this standard the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]." <u>Id.</u> at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

7

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."
<u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  <u>Id.</u> at
248.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
<u>Id.</u> at 249-50 (citations omitted).

     If the nonmoving party fails to oppose the motion, Rule
56(e) provides that the court may only grant the moving party's
motion for summary judgment "if appropriate."  <u>See, e.g.,</u>
<u>Anchorage Assocs. v. V.I. Bd. of Tax Review</u>, 922 F.2d 168, 175
(3d Cir. 1990); <u>see also</u> <u>Damiano v. Sony Music Entm't, Inc.,</u> 975
F.Supp. 623, 627 (D.N.J. 1996) (granting summary judgment on the
basis that motion considered unopposed); <u>U.S. v. Rohm & Haas Co.,</u>
939 F.Supp. 1157, 1161 (D.N.J. 1996) (granting summary judgment
on basis that plaintiff's argument was unopposed, and thus no
genuine issue of material fact was created).  A moving party's
motion is appropriately granted when that party is entitled to
judgment as a matter of law.  <u>Anchorage Assocs.,</u> 922 F.2d at 175.

     When, as here, "the non-moving party fails to oppose the
motion for summary judgment by written objection, memorandum,
affidavits and other evidence, the Court will accept as true all
material facts set forth by the moving party with appropriate

record support." <u>Carp v. Internal Revenue Serv.</u>, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (citations and quotations omitted).  Even if a record contains facts that might provide support for a nonmoving party's position, "the burden is on the [nonmoving party], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." <u>Morris v. Orman</u>, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989); <u>see also</u> <u>Atkinson v. City of Phila.</u>, No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000).

## II.  <u>Section 1983 and the Eighth Amendment</u>

The administrative defendants assert multiple legal arguments in support of their motion.[3]  The principal issue before the Court, however, is whether plaintiff's allegations rise to the level of constitutional violations.  To recover against a defendant under Section 1983 a plaintiff must establish that the defendant acted under color of state law to deprive him of a right secured by the United States Constitution or the laws

---

[3]  These include: (1) plaintiff fails to state a claim because defendants were not deliberately indifferent to his medical needs in violation of the Eighth Amendment; (2) defendants are entitled to qualified immunity; and (3) the Eleventh Amendment bars suit against the state and state officials in their official capacity.  We need not address these arguments because we find that plaintiff has failed to establish that genuine issues of fact exist as to whether administrative defendants violated his constitutional rights.

of the United States.[4]  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, Section 1983 provides an avenue of recovery for the deprivation of established constitutional and statutory rights.  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).

For plaintiff's claim to survive a motion for summary judgment there must be a genuine issue of fact as to whether defendants (1) acted under color of state law; and (2) deprived plaintiff of a federal right.  <u>Groman</u>, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  <u>Id.</u> at 638.  The color of state law element requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State."  <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982).

---

[4]  Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983.

Officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, supervisory liability may not be premised solely on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Some sort of personal involvement must be alleged.  Id.  Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior.  Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir. 1995).  There is no dispute here that the defendants acted under the color of state law.

The next inquiry in a Section 1983 action is to identify "the specific constitutional right allegedly infringed by the [defendants]."  Graham v. Connor, 490 U.S. 386, 394 (1989).

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because defendants were deliberately indifferent to his serious medical needs.  The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of

11

decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). This prohibition requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).

To succeed on an Eighth Amendment medical-care claim, an inmate must demonstrate that: (1) he has a serious medical need and (2) prison officials were deliberately indifferent to his medical needs. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

Deliberate indifference to a serious medical condition occurs where the prison official "knows the [inmate] face[s] a substantial risk of serious harm and [consciously] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Examples include "situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence" and "where necessary medical treatment is delayed

for non-medical reasons." <u>Natale v. Camden County Corr.</u>
<u>Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (quotations omitted).
<u>See also</u> <u>Lanzaro</u>, 834 F.2d at 347 ("Deliberate indifference is
also evident where prison officials erect arbitrary and
burdensome procedures that result in interminable delays and
outright denials of medical care to suffering inmates.")
(quotations and citations omitted).

Not every complaint by a prisoner concerning the adequacy of
medical care, however, constitutes a violation of the Eighth
Amendment. <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).
The deliberate indifference standard, in fact, is unquestionably
a high standard for a prisoner to meet. <u>See generally</u> <u>Estelle</u>,
429 U.S. at 105-06. An unwitting failure to provide adequate
medical care, a negligent diagnosis or treatment, or even medical
malpractice, does not support a valid claim under the Eighth
Amendment. <u>See</u> <u>id.</u> at 106 ("[A] complaint that a physician has
been negligent in diagnosing or treating a medical condition does
not state a valid claim of medical mistreatment under the Eighth
Amendment."); <u>White</u>, 897 F.2d at 108 ("Mere medical malpractice
cannot give rise to a violation of the Eighth Amendment."). 
Rather, "[i]n order to succeed in an action claiming inadequate
medical treatment, a prisoner must show more than negligence; he

must show 'deliberate indifference' to a serious medical need."[5]
Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

### III. **Plaintiff's Claims**

There is no disputing that plaintiff has a serious medical
condition. Plaintiff's ankle injury and GERD require medical
attention, and a delay in treatment of plaintiff's condition
could result in a life-long handicap or permanent loss. See
Lanzaro, 834 F.2d at 347.

Plaintiff has failed to show, however, that the
administrative defendants were personally involved with any
alleged violation of plaintiff's constitutional rights, which is
required under Section 1983. That they did not personally
respond to plaintiff's letters and requests to intervene in his
medical treatment does not violate the Eighth Amendment. See
Durmer, 991 F.2d at 69 (holding that prison administrators could
not "be considered deliberately indifferent simply because they
failed to respond directly to the medical complaints of a
prisoner who was already being treated by the prison doctor");

---

[5] The "deliberate indifference" must also be "repugnant to
the conscience of mankind[,]" Estelle, 429 U.S. at 105-06, as
cases involving doctors' liability demonstrate. See, e.g.,
Williams v. Vincent, 508 F.2d 541, 543 (2d Cir. 1974) (involving
doctors' choosing easier but less efficacious "treatment" of
throwing away prisoner's ear and stitching stump rather than
attempting to reattach ear); Jones v. Lockhart, 484 F.2d 1192,
1193 (8th Cir. 1973) (involving doctor's refusal to administer
prescribed painkiller and causing surgery to be unsuccessful by
requiring prisoner to stand on injured leg despite surgeon's
instructions).

see also Abdul-Karim Ali v. Terhune, 113 Fed. Appx. 431, 437 (3d
Cir. Sept. 30, 2004) ("[A]bsent a reason to believe (or actual
knowledge) that prison doctors or their assistants are
mistreating (or not treating) a prisoner, a non-medical prison
official . . . will not be chargeable with the Eighth Amendment
scienter requirement of deliberate indifference.") (quotations
and citations omitted).

Plaintiff has failed to show that anything in his medical
records would have given the administrative defendants any
indication he received allegedly inadequate treatment.  The
record of plaintiff's medical history shows an extensive
treatment history and frequent visits to the infirmary.  Although
plaintiff made repeated requests to prison doctors for
prescriptions, this was often only several days after his initial
request.  (See Chart of July 31, Aug. 5, & Oct. 28, 2003; Feb.
27, March 3, June 30, & July 30, 2004.)  Plaintiff's prescription
history shows that at the same time he repeatedly requested
medication, the medical defendants had already written
prescription refills for plaintiff.  (See Med. Rec. at July 1,
Aug. 1, Sept. 1, & Oct. 1, 2003; Feb. & July 2004.)  Plaintiff's
medical records also indicate that when he requested elevator
passes, medical personnel renewed them.  (See Chart at July 31,
Aug. 5, & Aug. 13, 2003; Feb. 27 & March 3, 2004.)

The Court, considering the evidence in the light most favorable to plaintiff, finds that no reasonable jury could find that a material issue of fact exists as to whether the administrative defendants' failure to personally respond to plaintiff's letters and requests constitutes deliberate indifference.

Plaintiff additionally alleges that prison officers seized his boots, which he wore to support his injured ankle, in violation of his Eighth Amendment rights.  Plaintiff alleges that his attempts to pursue an administrative remedy have failed.  Plaintiff, again, has not asserted that the administrative defendants had any personal involvement in the seizure.  The Court, considering the evidence in the light most favorable to plaintiff, finds that no reasonable jury could find that a material issue of fact exists as to whether the administrative defendants' failure to address plaintiff's letters and requests regarding his boots constitutes deliberate indifference to his serious medical needs.[6]

---

[6]  Plaintiff does not allege that the boots were prescribed to him for a medical purpose, nor is there support for such an allegation in the record beyond plaintiff's assertion that he wore the boots to support his ankle.  Since the record does not support a finding that the boots were related to plaintiff's medical treatment, even direct involvement by the administrative defendants in the taking of the boots would not rise to the level of deliberate indifference to plaintiff's serious medical needs.

16

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the administrative defendants' summary judgment motion.  The Court also will dismiss the cross claim for contribution by the medical defendants since the administrative defendants will no longer be defendants in this action.  The Court will issue an appropriate order and judgment.


                                   s/ Mary L. Cooper
                            **MARY L. COOPER**
                            United States District Judge

17