UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DERRICK TAYLOR,** | : | Civil Action No. 04-5864 (MLC) |
| Plaintiff, | : | |
| v. | : | |
| | : | MEMORANDUM OPINION |
| **ROY L. HENDRICKS, et al.,** | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

      This matter comes before the Court upon Application by Plaintiff, Derrick Taylor ("Plaintiff"), *pro se*, currently incarcerated at New Jersey State Prison, Trenton, for *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1) and *N.J.S.A*. 30:7C-5, the Interstate Corrections Compact ("ICC"). The Court previously issued an Order denying Plaintiff's request for appointment of *pro bono* counsel pursuant to *Tabron v. Grace*, 6 F.3D 147 (3d Cir. 1993), [Docket Entry #63], but granted reconsideration of a prior order denying *pro bono* counsel, [Docket Entry #59], to address the ICC issue. The current Application for *pro bono* counsel was opposed by the remaining Defendants in the case. The Court also invited the previously dismissed State Defendants to submit a position on the issue, as the State of New Jersey obviously has an institutional interest in the outcome of the current Application. The Court considered the matter pursuant to FED. R. CIV. P. 78, reviewing all written submissions by Plaintiff, *pro se*, current Defendants and the State Defendants. For the reasons stated below, the Court denies Plaintiff's Application for appointment of counsel pursuant to the ICC.

**I.     BACKGROUND**

      In November 2004, Plaintiff filed a Complaint against Defendants Roy L. Hendricks,

Ronald H. Cathel, Dr. George Achebe, Dr. Dunbar, and Mary Amata ("Defendants") alleging "a systematic pattern of deliberate indifference to the Plaintiff's serious medical needs and further contend[ing] that after having been given several notifications of said deficiencies within the medical department at New Jersey State Prison (N.J.S.P.), the defendants have made no [] apparent effort to correct such deficiencies." (Pl.'s Comp. at 2). Plaintiff subsequently filed an Application for Appointment of *pro bono* Counsel in January 1, 2005, which was denied without prejudice by the Court on February 10, 2005. (*See* Docket Entries # 9 and 11). In July 2005, the Court issued an Order terminating this action against Defendant Dr. Dunbar and the State Defendants. (*See* Docket Entry #35).

Plaintiff then renewed his Application for Appointment of *pro bono* Counsel in March 2006 based on his need to oppose Defendants' Motion for Summary Judgment. (*See* Docket Entry #48). In his second Application, Plaintiff claimed that he was entitled to appointment of counsel pursuant to the ICC. He stated that "[d]ue to the fact that I would have a State created <u>right</u> to professional legal assistance if housed in my sentencing state, not allowing me access to such assistance in New Jersey violates the Interstate Corrections Compact, ie '. . . no rights granted by the sending state shall be infringed upon by the receiving state.'" (Pl.'s Second App. at 1)(Pl. supplied emphasis);  In denying Plaintiff's second request the Court stated "there is no right to counsel bestowed by Connecticut, but that such appointment is entirely at the discretion of the contracted firm providing representation." (Court's Order dated May 3, 2006)[*see* Docket Entry # 5].

In a Motion for Reconsideration, Plaintiff presented a letter to the Court from The Law Offices of Sydney T. Schulman of Hartford, Connecticut, stating that if the alleged events had

occurred in Connecticut, the "Inmates' Legal Assistance Program would be available to help [Plaintiff] represent [him]self since [he] ha[s] presented a *prima facie* case." The Court granted Plaintiff's Motion for reconsideration, stating that "it should have considered the possibility that Plaintiff would have received *pro bono* counsel had the alleged events occurred while Plaintiff remained incarcerated in Connecticut." (Court's Order Dated June 19, 2006).

On July 27, 2006, the Court issued another order denying Plaintiff's request for appointment of *pro bono* counsel applying the factors articulated in *Tabron v. Grace*, but reserved decision on whether Plaintiff was entitled to appointment of counsel pursuant to the ICC. [Docket Entry #63]. In that same order, the Court invited Plaintiff, Defendants and the Attorney General's Office to submit briefs addressing Plaintiff's request for appointment of counsel. *Id.* For the reasons stated below, the Application to Appoint counsel pursuant to the ICC, is Denied.

## II.     DISCUSSION

Plaintiff claims that he is entitled to appointment of counsel in New Jersey, pursuant to the ICC, because he would have been appointed counsel had he remained imprisoned in Connecticut. (Pl.'s Ltr. Br. at 1). Defendants claim that there is no "right" to counsel under *Tabron v. Grace* or the ICC and that Plaintiff's request for appointment of counsel was properly denied. (Def.'s Br. at 3). Defendants additionally claim that in order to appoint counsel under the ICC "a New Jersey attorney familiar with the federal case law in New Jersey, and the Third Circuit, [must] review the plaintiff's Complaint to determine if . . . [a] primae facie case exists. . . ." *Id.* at 2. The Attorney General also opposed Plaintiff's Application for Appointment of *pro bono* counsel pursuant to the ICC, stating that "under *N.J.S.A.* 30:7C-5(e), [Plaintiff] is not

3

entitled to such representation." (AG Br. at 2).

The ICC provides regulations for the rights of prisoners who are transferred from one state to another. *N.J.S.A.* 30:7C-5. In relevant part it states that :

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any **legal rights** which said inmate would have had if confined in an appropriate institution of the sending state.

*N.J.S.A.* 30:7C-5(e) (emphasis added).

There is no legal "right" to counsel in Connecticut for civil litigants. The Administrative Directive issued by the State of Connecticut Department of Corrections, which addresses inmate legal assistance states that "[a]ccess to the courts shall not include representation before the courts or the filing of an appearance in a civil case. . . ." (Def.'s Exhibit A, ¶4). At issue in the present case is whether a "right" to counsel was created through a contract in which the State of Connecticut arranged with a private law firm, the Law Offices of Sydney T. Schulman, to provide legal services where a plaintiff has met a *prima facie* case, so that New Jersey must now provide similar services under the ICC. Plaintiff presented his request for assistance to the privately contracted firm in Connecticut and received correspondence from one of its attorneys, Richard P. Cahill, Esquire. In his letter to Plaintiff, Mr. Cahill informed Plaintiff that if the alleged events had occurred in Connecticut the "Inmates' Legal Assistance Program would be available to **help [Plaintiff] represent [him]self** since [he] ha[s] presented a *prima facie* case." (emphasis added). Plaintiff argues that this letter confirms that he had a "right" to receive

representation if housed in Connecticut and, therefore, under the ICC he should receive the same rights now that he is housed in New Jersey. The Court, however, disagrees.

 First, as noted, the incident which precipitated Plaintiff's filing of the Complaint, occurred in New Jersey, not Connecticut. The apparent contract between the State of Connecticut and the Schulman Firm relates exclusively, as best as the Court can determine from the record before it, to cases filed in Connecticut courts. Second, Mr. Cahill, in his letter to Plaintiff stated that, "Inmates' Legal Assistance Program would be available to **help [Plaintiff] represent [him]self** since [he] ha[s] presented a *prima facie* case," not necessarily that counsel would have been assigned to actually represent him (emphasis added). Thus, no legal "right" to counsel is reflected by Mr. Cahill's indication that Plaintiff may have met his *prima facie* case in Connecticut.

 Finally, notwithstanding this contract between the State of Connecticut and the Schulman firm, it is readily apparent that the Administrative Directive issued by the State of Connecticut Department of Corrections, which addresses inmate legal assistance, does not provide representation for inmates in civil litigation. As it states, "[a]ccess to the courts shall not include representation before the courts or the filing of an appearance in a civil case. . . ." (Def.'s Exhibit A, ¶4). The New Jersey scheme is similar, which affords inmates access to the courts by either providing inmates with adequate law libraries or providing them with adequate assistance from persons trained in the law. *N.J.A.C.* 10A:6-2.1, *see also N.J.A.C.* 10A:6-2.3. The two statutory schemes comport with the Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 356 (1996), which held that, while inmates are entitled to access to the courts, they are not entitled to a particular kind of access. (*See also Bounds v. Smith*, 430 *U.S.* 817, 828 (1977)). Specifically,

5

the Court held that an inmate's right to legal access "guaranteed no particular methodology but rather the conferral of a capability - - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.*

In the present case, both *N.J.A.C.* 10A:6-2.1 and the Connecticut Administrative Directive comport with Constitutional requirements set out by the Supreme Court and each makes clear that the purpose of each program is access, not representation. Neither New Jersey nor Connecticut would provide Plaintiff with *pro bono* counsel to represent him in this matter. Connecticut would not be required to provide counsel, as per the Administrative Directive, and New Jersey has already denied appointment of counsel based on the factors articulated in *Tabron v. Grace, supra*, which case governs the appointment of *pro bono* counsel within this Circuit. Thus, Plaintiff's argument that he is entitled to appointment of counsel, because he would have been appointed counsel had he remained incarcerated in Connecticut, is without merit.

### III.     CONCLUSION

The Court finds that it is clear that a legal right to counsel was not created in Connecticut and therefore, Plaintiff is not entitled to appointment of counsel in New Jersey pursuant to the ICC. An appropriate Order accompanies this Memorandum Opinion.



/s/ *John J. Hughes*
**JOHN J. HUGHES**
**UNITED STATES MAGISTRATE JUDGE**

Dated: August 31, 2006