<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DERRICK TAYLOR, | : | |
| | : | CIVIL ACTION NO. 04-5864 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>**COOPER, District Judge**</u>

<u>Pro se</u> plaintiff, Derrick Taylor ("Taylor"), is a prisoner
housed in a Connecticut state prison.  (See dkt. entry no. 80, 3-
2-07 Ord.)  However, from May 2003 to late 2006, Taylor was
housed in the New Jersey State Prison ("NJSP") pursuant to the
Interstate Corrections Compact.  (Compl., at 2; Appl. to Proceed
In Forma Pauperis, at 2.)  Taylor commenced this action on
November 30, 2004, alleging that medical and administrative
personnel at the NJSP were deliberately indifferent to his
serious medical needs, an ankle injury and gastroesophageal
reflux disease ("GERD"), in violation of the Eighth Amendment to
the United States Constitution.  (Compl., at 4.)  Specifically,
Taylor asserts that defendants, Roy L. Hendricks ("Hendricks"),
Ronald H. Cathel ("Cathel"), Dr. George Achebe ("Achebe"), Dr.
Dunbar, and Mary Amato ("Amato"), incorrectly named in the
complaint as Mrs. Amata, <u>inter</u> <u>alia</u>, failed to timely refill his
prescriptions, delayed in renewing his elevator pass, and seized

his Timberland boots, which supported his injured ankle.  (<u>Id.</u> at
2-4.)

The summons was returned unexecuted with respect to Dr.
Dunbar.  (Dkt. entry no. 5.)  Further, in an order and judgment
dated July 29, 2005, this Court (1) granted "summary judgment of
no cause of action" in favor of Hendricks and Cathel, (2)
terminated this action as to Hendricks and Cathel, (3) dismissed
Achebe and Amato's cross claims against Hendricks and Cathel, and
(4) terminated this action as to Dr. Dunbar.  (Dkt. entry no. 35,
7-29-05 Ord.)  Achebe and Amato now move for summary judgment in
their favor, in effect, pursuant to Federal Rule of Civil
Procedure 56.  (Dkt. entry nos. 77, 47.)  Taylor has not
submitted a brief in opposition to the motion, but instead filed
a letter listing his objections to the Court's various rulings,
which he would like to raise on appeal.  (Dkt. entry no. 81, 3-
17-07 Pl. Ltr.)  The Court, for the reasons stated herein, will
grant the motion.

## BACKGROUND

Taylor broke and dislocated his right ankle while housed in
a Connecticut state prison.  (Compl., at 2.)  As a result, the
ankle is extremely arthritic and the joint was "destroyed".
(<u>Id.</u>)  Also, Taylor walks with a cane, has a limited range of
motion, and asserts that he is in significant pain.  (<u>Id.</u>)
Doctors have prescribed Taylor 600 mg. of ibuprofen three times

2

daily for pain.[1]  (Id.)  Taylor asserts that his ibuprofen refills generally last 60 to 90 days.  (Id.)  He further asserts that "[e]ach time a prescription expires [he] ends up having to write requests, letters, administrative remedies, and even have family members call the prison just of get a simple refill." (Id.)  According to Taylor, he had to "jump through hoops" before the prison doctors would refill his prescriptions, and it often took 60 to 90 days to get the refill.  (Id.)

Taylor was housed on the fourth floor of the prison, and thus, he used an elevator pass to avoid walking up and down the stairs.  (Id.)  Taylor contends that when his elevator pass expired, defendants would not renew it for several weeks.  (Id.) Taylor also contends that "[a]s with the refills of medication, the reordering of the elevator pass [was] only done after [he] ha[d] spent weeks writing requests, remedies, letters, etc." (Id.)  When Taylor was without an elevator pass he had to walk up and down 6 to 7 flights of stairs using a cane, and thus, he often chose to miss recreation activities, Jewish services, and other programs.  (Id. at 3.)  Moreover, Taylor alleges that on July 25, 2004, prison officers took his Timberland boots, which he wore to provide ankle support, and subjected him to

---

[1]  Taylor asserts that ibuprofen is counter-indicated in light of his "second medication" for GERD.  (Compl., at 2.) However, this is not included in the list of grounds upon which he seeks relief.  (See generally id. at 7.)

disciplinary action for possessing the boots as part of a
"shakedown". (Id.)  According to Taylor, prison officials have
not returned the boots despite his attempts to resolve this issue
through administrative channels. (Id.)  Taylor complains that he
currently does not have footwear to support his ankle, and this
prevents him from receiving visits or entering certain parts of
the prison. (Id.)

Taylor was diagnosed with GERD in 1991. (Id.)  Doctors have
prescribed Zantac, Tagament, or a generic version of these drugs
to treat Taylor's GERD for the past 9 to 10 years. (Id.)
Taylor states that he has experienced severe pain and discomfort
over the past several years as a result of his GERD. (Id.)
Taylor also states that his stomach prescriptions usually lasted
60 to 90 days, and then he would submit letters and requests to
the NJSP staff for 60 to 90 days before he received a refill.
(Id. at 4.)  Taylor alleges that "[d]ue to the fact that [his]
medication is used to maintain the disease, and further that the
medication must be absorbed back into his system each cycle
before it is able to work properly, [he] ends up spending several
weeks at a time in pain and discomfort for no apparent reason
other than complete and deliberate indifference by the
defendants." (Id.)

Taylor's medical records show that between June 2003 and
March 2005 he visited the NJSP prison infirmary at least 14

4

times.  (Dkt. entry no. 47-4, Achebe & Amato's Stmt. of Undis. Mat. Facts, at ¶¶ 14-61.)

### DISCUSSION

## I.   Legal Standards

### A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for
trial." Anderson, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the
[non-movant's] position will be insufficient [to defeat a Rule
56(c) motion]; there must be evidence on which the jury could
reasonably find for the [non-movant]." Id. at 252.  "By its very
terms, this standard provides that the mere existence of some
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact."
Id. at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  Id. at
248.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
Id. at 249-50 (internal citations omitted).

    A movant is not automatically entitled to summary judgment
simply because the non-movant fails to oppose the motion.
Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d
Cir. 1990).  Instead, Rule 56(e) provides that the Court may
grant the unopposed motion "if appropriate".  Id.; Carp v.
Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at
*7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has

failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'").  An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'" Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *7 (E.D. Pa. June 20, 2000).

**B.    Section 1983 and the Eighth Amendment**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States

Constitution or the laws of the United States.  Groman v. Twp. of
Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does
not create substantive rights, but instead provides a remedy for
the violation of rights created by other federal laws.  Id.;
Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion
for summary judgment, there must be a genuine issue of fact as to
whether the defendant (1) acted under color of state law; or (2)
deprived the plaintiff of a federal right.  Groman, 47 F.3d at
633.  "The color of state law element is a threshold issue; there
is no liability under [Section] 1983 for those not acting under
color of law."  Id. at 638.  Further, officials may be liable
under Section 1983 for the acts of those over whom they have
supervisory responsibility.  However, civil rights liability
cannot be predicated solely on the doctrine of respondeat
superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.
1988).  Personal involvement in the alleged wrong-doing must be
shown.  Id.  "Personal involvement can be shown through
allegations of personal direction or of actual knowledge and
acquiescence", which must be made with appropriate particularity.
Id.; see Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir.
2006) (dismissing Section 1983 claims because there were no
allegations that the defendants were personally involved through
either direction or knowledge and acquiescence with the alleged

wrongs); <u>Jetter v. Beard</u>, 130 Fed.Appx. 523, 526 (3d Cir. 2005)
(dismissing Section 1983 claims against supervisory defendants
because plaintiff did not allege any facts to support a
conclusion that those defendants had personal involvement in the
medical treatment he received).

Once it has been established that the defendant acted under
color of state law, the Court must identify the federal right the
defendant allegedly violated.  <u>See</u> <u>Groman</u>, 47 F.3d at 633.
"[D]eliberate indifference to serious medical needs of prisoners"
violates the Eighth Amendment, which is applicable to the states
through the Fourteenth Amendment, because it constitutes
"unnecessary and wanton infliction of pain contrary to
contemporary standards of decency." <u>Helling v. McKinney</u>, 509
U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth
Amendment medical-care claim, an inmate must establish that (1)
he has a serious medical need, and (2) prison officials were
deliberately indifferent to such medical need.  <u>Rouse v.</u>
<u>Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).  A medical need is
considered serious if it is one a physician would diagnose as
requiring treatment or one that a lay person would easily
recognize as needing a doctor's attention.  <u>Monmouth County Corr.</u>
<u>Inst'l Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).
Also, if denial or delay causes "unnecessary and wanton
infliction of pain", a life-long handicap, or permanent loss, the
medical need is considered serious.  <u>Id.</u>

9

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'"  Lanzaro, 834 F.2d at 343 (internal citations omitted).  Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates."  Id. at 347 (internal quotations and citations omitted).  However, claims of negligence or malpractice are not sufficient to establish "deliberate indifference".  Rouse, 182 F.3d at 197; see White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment.").  Thus, in order to state a cognizable claim for failure to provide medical care in violation of the Eighth Amendment, a prisoner must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency".  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Taylor alleges that defendants knew of his problems in receiving medical treatment and that their actions or inaction constitute deliberate indifference to his medical needs in violation of the Eighth Amendment.  (Compl. at 4.)  With respect to Achebe and Amato, Taylor asserts that (1) Achebe knew about his problems but failed to respond to the letter and Inmate

10

Request Form ("IRF") he sent him, and (2) Amato "has had knowledge of his issues regarding this claim through both written and verbal communications". (Id. at 5-6.)  Taylor seeks injunctive relief requiring defendants to "promptly provide appropriate medical care," $50,000 in compensatory damages, and $50,000 in punitive damages against each defendant. (Id. at 7.)

## II.  Legal Standards Applied Here

The Court previously stated

> There is no disputing that plaintiff has a serious medical condition.  Plaintiff's ankle injury and GERD require medical attention, and a delay in treatment of plaintiff's condition could result in a life-long handicap or permanent loss.  See Lanzaro, 834 F.2d at 347.

(Dkt. entry no. 34, 7-29-05 Mem. Op., at 14.)  Nevertheless, Taylor has failed to show that either Achebe or Amato deprived him of a constitutional right.  See Groman, 47 F.3d at 633.

Amato is a registered nurse and was the Director of Nursing for Correctional Medical Services, Inc., which provides medical services to the NJSP, from 2003 to September 6, 2005. (Dkt. entry no. 47-4, Achebe & Amato's Stmt. of Undis. Mat. Facts, at ¶¶ 6(1), 6(3).)  Amato did not treat Taylor but did respond to three IRFs he submitted in 2004.  (Id. at ¶ 6(5).)  In her responses, Amato advised Taylor that (1) his records indicated that a clinic physician saw him on June 30, 2004 and a 90 day supply of Zantac had been ordered, and (2) if he continued to have medical concerns, he should submit a Health Services Request Form.  (Id.)

11

Amato does not recall having any in-person conversations with
Taylor.  (Id. at ¶ 6(6).)  Similarly, Achebe, the Medical
Director at the NJSP, does not recall having any communications
with Taylor.  (Id. at ¶ 8.)[2]  However, Achebe acknowledges that,
according to Taylor's medical chart, Achebe approved (1) Dr.
Tagle's request to refer Taylor for a physical therapy
consultation on May 22, 2003, and (2) Dr. Talbot's request to
refer Taylor for a podiatry consultation on January 15, 2004.
(Id. at ¶ 8.)  Thus, Taylor did not receive any direct medical
treatment from either Achebe or Amato.  (See id. at ¶¶ 7(16), 14-
61.)  That Achebe and Amato did not always respond to Taylor's
letters and IRFs does not constitute deliberate indifference to
medical needs.  See Beard, 130 Fed.Appx. at 526 (dismissing
Section 1983 claims against supervisory defendants because
plaintiff did not show that they had any personal involvement in
his medical treatment); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d
Cir. 1993) (holding that prison administrators could not "be
considered deliberately indifferent simply because they failed to
respond directly to the medical complaints of a prisoner who was
already being treated by the prison doctor").

---

[2] Taylor states, in the complaint, that he had written and
verbal communications with both Achebe and Amato.  (Compl., at 5-
6.)

Taylor did not submit a brief opposing Achebe and Amato's motion.  Instead, Taylor filed a letter stating that he objects to the Court, <u>inter alia</u>, (1) deciding the motion because he has been "unable to file a response to that motion due to [his] having been transferred to a state were no law libraries exist and where the law firm that contracts with the state (Connecticut) is forbidden by contract to assist [him] in any way", (2) having granted summary judgment in favor of Hendricks and Cathel, and (3) "refusing to provide [him] the same level of legal assistance [he] would have received in [his] sending state- In violation of the Interstate Corrections Compact."  (Dkt. entry no. 81, 3-17-07 Pl. Ltr., at 1-2.)

Taylor has failed, however, to show that anything in his medical records should have indicated to either Achebe or Amato that he was receiving inadequate medical care.  Instead, Taylor's prison medical records show an extensive treatment history and frequent visits to the infirmary.  (Dkt. entry no. 47-4, Achebe & Amato's Stmt. of Undis. Mat. Facts, at ¶¶ 14-61.)  Although Taylor made repeated requests to prison doctors for prescriptions, this was often only several days after his initial request.  (<u>See</u> <u>id.</u>)  Taylor's medical history indicates that the medical staff did respond to his frequent IRFs and Health Services Request Forms, and he did receive elevator pass renewals and prescription refills.  (<u>Id.</u> at ¶¶ 51, 53-61.)  Further, in

13

November 2005, a prison doctor noted that Taylor was taking too much medication and running out too soon, and thus, he removed Taylor from a "keep on person" medication regime and ordered that his medications be given to him daily by a nurse.  (Id. at ¶ 48.) Accordingly, this Court will enter judgment in favor of Achebe and Amato because the undisputed facts, viewed in the light most favorable to Taylor, do not suggest that either Achebe or Amato had (1) directed or knew and acquiesced in any alleged violation of Taylor's rights, or (2) subjected Taylor to undue suffering or erected burdensome procedures causing "interminable delays" in Taylor's medical treatment.  See Thomas v. Independence Twp., 463 F.3d at 298; Lanzaro, 834 F.2d at 343, 347.

The Court will also enter judgment in favor of Achebe and Amato because Taylor has failed, by definition, to bring to this Court's attention any evidence that could conceivably raise any genuine issue of material fact as to his claims.  Achebe and Amato assert that Taylor received continuous medical treatment and monitoring by the prison medical staff.  (See dkt. entry no. 47-4, Achebe & Amato's Stmt. of Undis. Mat. Facts, at ¶¶ 14-61.) Specifically, Taylor (1) received medication for his ankle and GERD, (2) received prescription refills and elevator pass renewals, and (3) was examined by numerous doctors and nurses. (Id.)  Thus, Achebe and Amato have met their burden of demonstrating prima facie entitlement to summary judgment on

14

Taylor's deliberate indifference claims against them.  In support of the motion, they have submitted a Statement of Undisputed Material Facts and a number of documentary exhibits, including Taylor's deposition, Achebe and Amato's interrogatory answers, and a number of Taylor's IRFs.  (Dkt. entry no. 47.)  Thus, the burden shifts to Taylor to show that genuine issues of material fact do exist.  See Anderson, 477 U.S. at 249.

Taylor has failed to show that anything in his medical records would have given either Amato as Director of Nursing, or Achebe as Medical Director, any indication that he might be receiving inadequate treatment.  Further, Taylor has not submitted any objections, memoranda, affidavits, or other documents in opposition to the motion for summary judgment.  The complaint does not make any specific allegations with respect to how either Achebe or Amato were deliberately indifferent to Taylor's GED or ankle injury, except that they were aware of his complaints regarding delays with prescription refills and elevator pass renewals.  (See Compl.)  Therefore, the Court finds that entering summary judgment in favor of Achebe and Amato is "appropriate" in the present case.  See Anchorage Assocs., 922 F.2d 168 at 175.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant Achebe and Amato's motion for summary judgment.  The Court will issue an appropriate order and judgment.


<u>    s/ Mary L. Cooper    </u>
**MARY L. COOPER**
United States District Judge

16